24-8080 United States v. Seminole counsel for appellant if you make your appearance and proceed please good morning may it please the court counsel my name is gail johnson and i represent verdict seminal in this direct appeal from his criminal convictions i'm going to focus my comments today on the first claim which is interrelated issues factually and legally all touching upon the fundamental right under the sixth amendment to an impartial jury and a fair trial by an impartial jury of course there's two aspects factually that lead up to this the first is one juror violating repeated admonitions from the court not to discuss the case before deliberations when he raised the issue of self-defense in the jury deliberations room while the trial evidence was still being presented the second layer then is what happens next which is that apparently two other jurors then had an ensuing conversation with an unknown number of individuals at the clerk's office we don't know who those individuals were we don't know how many and we don't know what the content of that conversation was because the trial court failed to hold a remer hearing we do know that they worked in the clerk's office right so i think that's a fair inference from the record okay and the court as in the district judge instructed the jurors that if there were any concerns that they should be brought to the attention of the court how in the world are jurors going to do that but not contact some court official to let that court official know that there was a concern i mean what what other mechanism would there be and how could one infer some misconduct from that two questions go ahead and answer that yes your honor the other mechanism was the mechanism that the district court instructed the jurors to use which was to submit a signed note if they needed to communicate with the court okay and let's assume there was a deviation from this stated mechanism what what could one infer as it relates to impropriety in that when the jurors spoke to a court official whose responsibility related to the district court judge they didn't speak to a third party they spoke to a court official well your honor i think it's not the defendant's burden to show impropriety when that issue here is the lack of process in granting a remer hearing when there when there may be prejudice from ex parte contact but well you use the word maybe prejudice and that leads to the question what what does it take to trigger a remer hearing i mean if the court can on its face see that there was no basis for prejudice as a matter of law why would it need to conduct a remer hearing to pronounce again that there was no prejudice as a matter of law i mean it would seem that there would need to be some basis to believe even if you assume and i think this is predicated on the notion of hypothetically x y and z happen even if those things happen as a matter of law they were not prejudicial then why would the court need to conduct a remer hearing to validate that fact because your honor we don't actually know what happened nor did the district court because the district court did not identify the individuals in the clerk's office and did not interview any of them did not interview the jury either of the two jurors who went to the clerk's office and did not interview the original juror who committed the misconduct none of those interviews we have a record here where there was no inquiry whatsoever so to say that i think it's putting the cart before the horse in that situation to put a burden on the defendant to demonstrate prejudice that's the whole point of a remer hearing is for the defendant to have the opportunity to explore potential prejudice well counsel can i ask about what i think is your probably bigger problem which is after the district judge made a recitation for the record as to what was said in general terms from the employees of the clerk's office he asked trial defense counsel and the prosecutor any questions or concerns and they said nope no judge good to go here so you're saying well we don't have the burden to show prejudice but this is on plain air so have we ever had a case where we have found plain error for the failure to hold a remer hearing um your honor i'm not aware of such a case but i think given for that aspect of the claim regarding the ex parte contact that happened at the clerk's office given that the remedy that is sought is an evidentiary hearing as opposed to vacating the convictions for that aspect of the claim i think on plain error review it is reasonable to say that we need the process here otherwise no anytime a defense counsel um forfeits but through negligence um asking for a remedy hearing literally we would have these records where the worst possible jury contamination could have happened but we're not going to know about it that can't be the law well but we do have cases and mcveigh comes to mind where we say hearing doesn't have to be held if it would not be helpful or useful and so here again we have a record the district judge did make a record as to the communications and you know just laid it out there for counsel to uh you know raise concerns i mean it was kind of an obvious time for trial defense counsel maybe just to step in so i don't i hear what you're saying about you know the process and not having a record so we don't know what we don't know but on the other hand plain error as you know is a steep hill to climb and so i guess i'm asking how can we reverse just by saying well it was and that may have been plain but once we get to prong three i think it becomes a little more difficult can you address the you know the prejudice aspect here um yes the record that the district court made simply highlighted the lack of knowledge we have for example the plural term those is used about the original juror misconduct so we know for sure based on the record the district court made that one of the topics discussed in the jury deliberation room before the was head ended one of those topics was self-defense which obviously goes to the core of this case we don't know how many other topics there were we don't know what the other topics were to allow this conviction to stand without at least giving mr seminal some process a remor hearing on remand and again i think the plain error standard should be applied differently when we're talking about a remedy of a remand for an evidentiary hearing as opposed to vacating the conviction that's a different ask i well i mean where's the foundation for that i mean i don't know any case where we've calibrated uh the plain error standard that way and in fact it would seem to me that what we're when we're talking about an evidentiary hearing going to the point we don't know what we don't know well whose fault is it that we don't know what we don't know i mean it's defense counsel for not raising the objection and by not raising the objection we're left in this place where there's a vacuum and that vacuum invariably has got to cut against the defendant because the defendant didn't raise the objection i mean we can't you know so what basis will we have because what we're talking about is reversal we're saying there there was a prejudicial clear and obvious error here what basis do we have to make such a statement when there is nothing to suggest that there's been harm um so your honor my position is on the remor claim the basis for reversing is it was clear and obvious error not to grant a remor hearing of course yes defense counsel is at fault there is no doubt about that that's why i raised this on plain error review but given that the outcome of that remor hearing is not automatically vacation of the conviction i think that is a different inquiry for this court let's let's talk about the the raising of the issue of self-defense to begin with um yes that violated the court's instructions but what about that suggests that there's some implicit bias against this defendant i mean the fact that self-defense was raised it could have been raised in the sense of boy he had a good self-defense argument didn't he i mean what about it the categorical statement of self-defense what about that suggests that there was some implicit bias against the defendant your honor i think because it evidences irrefutably that that juror violated nine separate admonitions from the district court that's irrefutable evidence that that juror was either incapable or unwilling to follow the court's instructions it doesn't get more basic than that in terms of implicating the defendant's six-amendment right to a fair trial by an impartial jury where's the through line between failure to follow instructions and implicit bias is that what we're talking about is whether there was bias by the juror against this particular defendant and the fact that there was a difficulty of the juror in following instructions how does that correlate to bias well your honor i think it's more than a difficulty i think again unwillingness or inability and either of those just mean we can't trust that juror to follow instructions but again it's not just self-defense that was discussed in the jury room other plural topics were discussed we don't even know what they are because no hearing was held why can't we conclude that a hearing was held i mean the judge on the record made a recitation and teed it up and then the parties did not request the taking of evidence why wasn't the rumor requirement complied with there's zero evidence in the record that a rumor hearing was held well but again when we say a hearing um you know the parties are present the defendant was present the record was made as to the issue and then the parties didn't want to present evidence so that was their obligation so why can't we look at the record here and say well there was a rumor hearing it was pretty short and cursory but there was a hearing that was held you know generally the way these hearings are held in the case law is that the district court is responsible for starting an inquiry it's not that the parties are calling in witnesses and let me also be clear we of course have the implication of the defendant's right to be present the defendant was not allowed to be the defendant and his counsel were not allowed to be present when the conversation happened in the clerk's office and defendant and his counsel were not allowed to be present when the conversation happened between the clerk's office and the court and I see my time running down I would also just quickly like to turn to the motion for mistrial regarding the outpour or outburst which is a preserved issue very clearly in the district court acknowledged that and again that outburst went to the core issue in this case of self-defense I do want to emphasize factually for the court and highlight a couple pieces of evidence during the testimony of Vanna Eagle the 9-1-1 call was introduced that's government's exhibit 1-2 it shows up in the conventionally submitted materials with a different number on them just going to give the court that as well which is gov 12 underline 395 I believe it's the only audio file in there it's clear in there within the first 30 seconds that Ms. Eagle tells the 9-1-1 operator quote they are shooting at each other here at this house unquote and then another minute or so passes and then she talks about other shots uh happening uh and then clearly there's a lot of wailing and that's when the decedent is shot so she also knows what a misfire sounds like so the decedent here had tried to shoot my client had failed she knows what a misfire sounds like when she says they are shooting at each other she must be referring to Mr. Vance and that absolutely undermines the government's theory that Mr. Vance or sorry Vance Addison Mr. Addison fired last of course we have a cumulative error claim too because we have this jury instruction error on the initial aggressor problem which this outburst goes directly to so if the court doesn't have any questions on that I'll reserve my remaining couple minutes for rebuttal thank you good morning and may it please the court counsel my name is Christine Martins and I represent the United States well there's five issues uh this morning for the court's consideration they relate really to three trial level uh alleged errors and the only preserved error is that uh outburst in the courtroom that counsel was just talking about so I think I'd like to go there so what is the test for when a rimmer hearing is required Ms. Martin I mean what is the which circumstance triggers the obligation to conduct a hearing certainly your honor so a rimmer hearing is really only necessitated when you have exterior contact with the jury this court and several and I believe all the courts that I've looked at break these jury misconduct and bias issues into two pieces external things to the jury outside influences and intra jury conduct so we're really only in the zone of a rimmer hearing when we have those external contacts and rimmer itself had to do with the offer of money in exchange for a juror member to deliver a certain verdict which is certainly the kind of thing where a hearing should be held on the other hand we have those intra jury function questions and we've talked a little bit this morning already about McVeigh and I think that that's a good case to illustrate this difference so Timothy McVeigh bombed the Oklahoma city building killed 168 people and among those was the daycare I think that was on the first floor it got enormous trial or publicity before trial and during trial that defendants in that environment moved for a change of venue and it was in that context that someone reported to the clerk's office that one juror said something along the lines of gee I hope I'm not the holdout and another juror answers well we all know what the verdict should be now in that case the district court chose not to conduct a hearing where those jurors were pulled into the courtroom and interviewed but instead made that recitation on the record and denied the motion for mistrial based on it now this court in that case explained that the hearing was not required it was up to the district court's discretion and that discretion should be guided by the context and the credibility of the allegation and the seriousness of the allegation and ultimately in that case this court said that the comments from the juror were actually ambiguous and didn't slice in terms of showing explicit bias what against one party or the other so certainly when we have this framework here we have an introductory issue there's no evidence of any kind of external contact with this jury so we don't even get that's not what defendant's position is the defendant I spoke about the clerk's office being essentially an extension of the court at least I didn't hear a uh an acclamation to that point so why why isn't this an external contact this is not an external contact because we don't have anything of substance happening with the clerk's office how do we know that because that's what the record reflects that we have is that this is just a one-way ratchet that the clerk uh received the report and funneled it along to the district court without any evidence in this record of any other contact well you heard the defense well the point is you heard the defendant uh defense lawyer saying that that the reason that we don't know whether anything else happened is because there wasn't a hearing in other words it becomes a cycle I mean it's we we don't know it's a one-way ratchet we don't know what they talked about in the clerk's office because the court chose not to have a hearing so I mean why is it the logic of that um persuasive I think that there are a couple of different reasons your honor so first and foremost when the district court went on the record with the parties and defendant personally present recited what happened and asked the parties what happened and defense count or if they had questions or concerns about the proposed course of conduct defense counsel said no so to the extent that there is any issue with the record we have explicitly declined to below develop that record and that's why the government asserts that this claim is altogether waived defendant was specifically confronted with this problem and declined to take any further action and on appeal he wants further action that the position is directly opposite so and I think that the lack of record here cuts against any claim of prejudice and it shows that the record well I would submit is not ambiguous but it is certainly in the sense that the court in McVeigh said where that we can't divide from this record whether it cuts one way or another and we shouldn't infer things that actually aren't in the record I'll agree with Mr. Seminole that there are cases where court staff can be those external influences but we're talking about things like a bailiff making a comment to a juror about what they think the outcome of the trial should be or the recent case I think it was Demmer that this court decided where an advertisement had been put up in the jury room. Derman. Derman, thank you. I misspoke but certainly your honor you're familiar with the case and and those are external information actually the court said in that case that the advertisement wasn't external because the investigation showed that it was a juror member who had taken it out of a magazine so it was really an internal jury thing that had happened but the the concern was that it could be external because it was outside materials uh that were in that jury room along with some comments. You spoke about McVeigh when in looking at what the district court did there did it draw or or do or in any of these cases do the district courts specifically draw the distinction between external and internal in other words when when Mitch handled it the way he did the did he predicated on the notion that it was an internal contact? He didn't explain that logic on the record but that that distinction exists in the case law and so I don't think there's any reason to think that the district court didn't have that distinction in mind in suggesting the course of action to the parties. Well counsel can I ask going back to McVeigh though as I recall that opinion when discussing the need for hearing the opinion says on quote a rare occasion the hearing need not be held that tells me that the starting point is that there will be a hearing it's only on those rare occasions where it may not be useful or necessary where you don't have to have a hearing and then of course we have other cases like Schism where there was communication directly with the judge between the juror and I think it was either the courtroom deputy or the bailiff had brought concern to the court and so I'm not sure this distinction matters as much in terms of whether it's communication outside or intra court communication within the jury room but I guess can you address here I hear Mr. Seminole's argument to be that once the district judge alerted the parties to this sure in an ideal world a trial defense counsel would have said we need to bring in the jurors individually and ask them about the communications that didn't happen here but the court has its own independent responsibility to make that record and it didn't do that here I mean it does it minimally and so and that gets at what our core constitutional rights of the defendant so can you address I know that was this is a long recitation but I'm getting to the prejudice element here on plain air prong three how do we think about that in this context? I think that this court should think about it both in terms of what the record looks like and what the record actually says and what the record reflects happened is that someone made a comment about self-defense and the jury immediately shut it down which is following the instructions given by the court in terms of not to discuss the case with anyone including amongst themselves until it's formally submitted with the charge for deliberations and from the record I don't think the court should infer anything but what the record actually says it's just a comment it's just as likely that someone walked out of that courtroom into the jury room and said whoa self-defense is going to really be an issue when we deliberate or something like that that's totally innocuous that got shut down versus maybe expressing some sort of initial impressions of what the defendant's self-defense claim is the record doesn't tell us what that is but it does reflect that the jury immediately shut that conversation down and then they followed their obligation to report it and I disagree with Mr. Seminole's read of the record about that as well what the record here reflects is that this jury panel was sworn in introduced to the clerk directed to go to the clerk to communicate issues to the court and orally instructed to do so through a note shortly after that the district court read the written instructions talking about how you have the written instructions in front of you follow along if there's any difference between oral instructions of the court and the written instructions the written instructions carry the day so when we go to the written instructions what we find is that first charge jury instruction number five talks about the importance of waiting to deliberate until the case has been formally submitted the importance of ignoring all outside information and then closes with and if anything happens contact the court without specifying whether that should be in writing or verbally now a couple of days go by before this happens because this is I believe the close of the third day of trial after Mr. Seminole testifies in his own defense as the 18th witness presented to this jury with self-defense clearly a central issue in this trial the whole way and I think it's perfectly reasonable at that point for that jury to go back to its written instructions and say I think we're obligated to report to the court let's go talk to the clerk's office and so again I think that this record really shows that this jury was doing its very best to honor those instructions to the letter and there's no reason to think that this jury would have done otherwise based on the record we have and so when we're thinking about that prejudice to really bring it back around to the heart of the question there's nothing about the face of the record that reflects anything that would have would lead to the impression of prejudice against Mr. Seminole that his rights are somehow violated that this jury was somehow anything but impartial and the court in trying to figure out what to do this court explained in McVeigh that there's a careful balancing act in choosing that course of conduct whether or not to hold a hearing that the court must also weigh the potential impacts of the hearing itself because remember you're going to mid-trial before the case is submitted pull those jurors in probably at least three of them if not more and talk to them about what's been going on and what was said subjecting them to questioning at least directed by the court if not also by the parties so there's certainly a chance to leave impressions about the evidence and the proceedings at trial that might be adverse to either party so that carries its own danger stopping the proceedings and that's your honors why the district court behaved so reasonably here in reciting what happened and asking the parties if anything else needed to be done and having declared that nothing further needed to be done below Mr. Seminole can hardly now say more should have been done if there are no further questions as to the jury misconduct question I guess I would add one more thing on the communications with the clerk's office and that ratchet with the court I was unable to find any case where that communication that funneling of information was singled out and what I you do find in the case law McVeigh since we've been talking about that case is the cases just recite it was reported to the clerk and then jump into the merits of the thing so I think that this is also the normal mechanism that a jury would use to convey such message and as long as there's not sort of this implication that say the clerk's office told somebody something about what the verdict should be that that's just the normal channel through which this information flows and nothing should be inferred from that so with that if there are no further questions about that issue your honors I would touch on the motion for mistrial after the courtroom outburst as that's the only preserved issue so here the district court immediately stopped the proceedings immediately told the jury to disregard the outburst excuse them from the courtroom dealt with the motion for mistrial citing this court's case law and then when the court brought the jury panel back in gave a fairly extensive instruction on the importance of disregarding that courtroom outburst and the general rule when there is information in front of a jury excuse me that is improper is that that curative instruction is able to remedy remedy any possible prejudice and there's no reason to think that that's not the case here so specifically below the district court relied on the case united states versus ensign yes and while it's an unpublished opinion it dealt directly with a courtroom outburst in that case which was a drug and gun trial there was evidence that had been excluded before trial about a murder that had happened sort of in the mix of the events that were the subject of the trial and during the trial even despite the court's exclusionary order reference had been made to the killing and the decedent's mother from the gallery called the defendant a murderer so in that case this court said that the curative instruction was good enough and then we would also point the court to paroled where we weigh the prejudicial impact of that improper information in light of the entire case and central to the determination that improper information was not prejudicial there was the idea that the improper information hadn't occurred for the first time at that motion for mistrial and here your honors as i mentioned before mr seminal was witness number 18 to testify in his own defense i see i'm out of time may i conclude my thought finish your thought um to testify in his own defense and this was while a central issue in the trial it would have been no surprise to the jury that it would be hotly contested and there's again no reason to think that this jury would not have followed those instructions with that your honor we ask that the court affirm save for the on the double jeopardy issue thank you counsel thank you thank you on the remmer issue i just want to quickly just remind the court how mcveigh is so distinguishable there it was clear that the court knew the content of the conversations um and there was a basis to for the court to infer that the juror in question was following the court's instructions in terms of the prejudice issue i think i should have done a better job in my initial argument of saying that under remmer as modified by this court um that presumption of prejudice prejudice is a qualified presumption and the defendant meets it simply by showing that the conversation in the jury room about what's about the case that's not reasonably disputed here so once that presumption of prejudice arises a hearing needs to be held in terms of this court's concerns about well gosh can't we infer that um because these were public officials there's no problem no impropriety i just direct the court's attention to the u.s supreme court's case in parker and this court's decisions in little and rubenstein those were addressed in mr seminole's opening brief pages 23 24 and his reply brief pages 11 and 12 which all involve public servants and stand for the principle i think the principle can arise from those cases that just because there's public servants involved in the ex parte contact with jurors doesn't mean no impropriety could occur and finally if i could briefly address the insidious case on the motion for mistrial issue to be clear insidious was a plain error review of that issue in that case because no motion for mistrial was made there here of course the issue was thoroughly preserved and finally with my remaining 22 seconds i don't usually raise cumulative error issues in this court but i have in this case because it's interesting that all of and important i think that all of the issues touch on the core issue of self-defense and whether or not mr seminole was going to be convicted or acquitted and so i think the court could also look again at the jury instruction issues and accumulate the prejudice when it does its plain error analysis thank you we ask the court to reverse and i know again the court the government has conceded one of the convictions thank you case is submitted thank you counsel